1   ARNOLD & PORTER LLP
    MAURICE A. LEITER (State Bar No. 123732)
2   maury.leiter@aporter.com
    777 South Figueroa Street, 44th Floor
3   Los Angeles, California 90017-5844
    Telephone: +1 213.243.4000
4   Facsimile: +1 213.243.4199

5   ARNOLD & PORTER LLP
    MICHAEL J. BAKER (State Bar No. 56492)
6   michael.baker@aporter.com
    JEREMY M. MCLAUGHLIN (State Bar No. 258644)
7   jeremy.mclaughlin@aporter.com
    Three Embarcadero Center, 7th Floor
8   San Francisco, California 94111-4024
    Telephone: +1 415.471.3100
9   Facsimile: +1 415.471.3400

10  *Attorneys for Defendants Bristol-Myers Squibb Company,*
    *Sanofi-Aventis U.S. LLC, Sanofi US Services Inc.,*
11  *and Sanofi-Synthelabo Inc.*

12

13

14                   **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**

15

16                                      C  12    4641

17  VIRGIL WALDEN, JR. *et al.*,           )   Case No. _____
                                          )
18           Plaintiffs,                   )
                                          )
19                                        )
         v.                               )   **DEFENDANTS' NOTICE OF REMOVAL**
20                                        )   **OF ACTION PURSUANT TO 28 U.S.C.**
    BRISTOL-MYERS SQUIBB COMPANY,          )   **§§ 1332, 1441, 1446, and 1453**
21  SANOFI-AVENTIS U.S. LLC, SANOFI-       )
    AVENTIS U.S., INC., SANOFI-            )   **DEMAND FOR JURY TRIAL**
22  SYNTHELABO, INC., MCKESSON            )
    CORPORATION, and DOES 1 to 100,        )
23                                        )
24           Defendants,                   )
                                          )
25

26

27

28

─────────────────────────────────────────────
                    NOTICE OF REMOVAL

## I.   INTRODUCTION AND FACTUAL BACKGROUND

1.     Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and any other applicable laws, Defendants Bristol-Myers Squibb Company ("BMS"), Sanofi-Aventis U.S. LLC, Sanofi US Services Inc. (f/k/a Sanofi-Aventis U.S. Inc.), and Sanofi-Synthelabo Inc.[1] (collectively "Sanofi") hereby give notice of removal of the above action, entitled *Virgil Walden, Jr. et al. v. Bristol-Myers Squibb Company et al.*, bearing Civil Action No. CGC-12-523944, from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.

2.     On September 4, 2012, Plaintiffs filed this Complaint against Defendants BMS, Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., Sanofi-Synthelabo Inc., McKesson Corporation ("McKesson"), and Does 1-100 in the Superior Court of the State of California, County of San Francisco. Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of the Complaint and Summons is attached as Exhibit A.

3.     The *Walden* Complaint includes 75 Plaintiffs from eight states across the country who allegedly have sustained injuries as a result of ingesting Plavix® -- a prescription antiplatelet medication manufactured by Defendants BMS and Sanofi. The 75 Plaintiffs seem to be unrelated. Plaintiffs do not allege that they received Plavix® from the same prescribing physician. They do not allege a common condition for which they were prescribed Plavix®. They do not allege similarities in length of exposure to Plavix®. They do not all allege the same type of Plavix®-related injuries.

4.     As further set forth below, jurisdiction over this case is proper based on diversity. Complete diversity exists between all properly joined Plaintiffs and Defendants. Defendant McKesson Corporation's citizenship should be disregarded because it has been fraudulently joined. Similarly, the citizenship of the unnamed Doe Defendants is ignored for removal purposes. The citizenship of the one non-diverse Plaintiff -- thrown in for the sole purpose of thwarting removal --

---

[1]    Defendant Sanofi-Aventis U.S. Inc., incorrectly designated as "Sanofi-Aventis U.S., Inc." in the Complaint, changed its name to Sanofi US Services Inc. on June 11, 2012. Defendant Sanofi-Synthelabo Inc. was incorrectly designated as "Sanofi-Synthelabo, Inc." in the Complaint.

- 2 -

1  should be ignored under the "egregious misjoinder" doctrine.  The Court should retain jurisdiction

2  over the diverse Plaintiffs' claims.

3  **II.    FEDERAL JURISDICTION**

4      **A.    DIVERSITY JURISDICTION**

5      5.    Defendants BMS and Sanofi remove this action on the basis of complete diversity of

6  citizenship pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  There is complete diversity between all

7  properly joined Plaintiffs and properly joined Defendants.

8      6.    Defendant BMS is a corporation organized and existing under the laws of the State

9  of Delaware, with its principal place of business in New York.  Defendant BMS is, therefore, a

10  citizen of the States of Delaware and of New York.

11      7.    Defendant Sanofi-Aventis U.S. LLC is a limited liability company organized under

12  Delaware law.  The sole members of Sanofi-Aventis U.S. LLC are Aventis Pharmaceuticals Inc.

13  and Sanofi-Synthelabo Inc.  Aventis Pharmaceuticals Inc. is a corporation organized and existing

14  under the laws of the State of Delaware, with its principal place of business in New Jersey.  Sanofi-

15  Synthelabo Inc. is a corporation organized and existing under the laws of the State of Delaware,

16  with its principal place of business in New Jersey.  Defendant Sanofi-Aventis U.S. LLC is,

17  therefore, a citizen of the States of Delaware and of New Jersey.

18      8.    Defendant Sanofi US Services Inc. is a corporation organized and existing under the

19  laws of the State of Delaware, with its principal place of business in New Jersey.  Defendant Sanofi

20  US Services Inc. is, therefore, a citizen of the States of Delaware and of New Jersey.

21      9.    Defendant Sanofi-Synthelabo Inc. is a corporation organized and existing under the

22  laws of the State of Delaware, with its principal place of business in New Jersey.  Defendant Sanofi-

23  Synthelabo Inc. is, therefore, a citizen of the States of Delaware and of New Jersey.[2]

24      10.    Defendant McKesson Corporation is fraudulently joined.  Therefore, its citizenship

25  must be ignored for purposes of determining the propriety of removal.  To the extent its citizenship

26

27  _____

28  [2]    The Complaint erroneously alleges that Defendant Sanofi-Synthelabo Inc. is headquartered in New York.

1    is considered, on information and belief, Defendant McKesson Corporation is a citizen of the States

2    of Delaware and California. Ex. A, ¶ 90.

3        11.    The citizenship of nominal parties and parties sued under fictitious names (Does 1 -

4    100) is disregarded for purposes of removing on the basis of diversity jurisdiction. 28 U.S.C.

5    § 1441(a); *Wood v. Davis*, 59 U.S. 467, 469 (1855) ("It has been repeatedly decided by this court,

6    that . . . nominal parties . . . cannot oust the federal courts of jurisdiction . . . ."); *Roth v. Davis*, 231

7    F.2d 681, 683 (9th Cir. 1956) ("In determining the question whether diversity of citizenship

8    requisite to jurisdiction exists . . . the presence of a nominal party with no real interest in the

9    controversy will be disregarded.") (quotations and citation omitted); *Strotek Corp. v. Air Transp.*

10   *Ass'n. of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002) ("Nor may the presence of a sham or nominal

11   party defeat removal on diversity grounds.") (citations omitted).

12       12.    Plaintiffs are 75 individuals from the States of Alabama, West Virginia, Arkansas,

13   New York, Arizona, Nevada, California, and Colorado. *See infra* Section III. Only 1 of the 75

14   Plaintiffs is a citizen of the State of New York, but the citizenship of this Plaintiff should be

15   disregarded as fraudulently misjoined.

16                    **i.    Fraudulent Misjoinder of the New York Plaintiff**

17       13.    The vast majority of Plaintiffs are diverse from the only properly joined Defendants,

18   BMS and Sanofi. Only one Plaintiff is non-diverse, but that Plaintiff has been fraudulently

19   misjoined so as to defeat diversity jurisdiction. *See In re Diet Drugs (Phentermine, Fenfluramine,*

20   *Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 673 (E.D. Pa. 2003) ("[T]he same

21   principles of fraudulent joinder apply where a plaintiff is improperly joined with another plaintiff so

22   as to defeat diversity jurisdiction.") (citations omitted); *In re Rezulin Prods. Liab. Litig.*, 168 F.

23   Supp. 2d 136, 146-48 (S.D.N.Y. 2001) ("[A]ccordingly, as the plaintiffs have been misjoined, and

24   the misjoinder of plaintiff Dupree in particular destroys diversity, the court will sever her action for

25   purposes of maintaining the defendants' right to removal of the remainder of the action."); *In re*

26   *Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), No. 11-

27   3045, 2012 WL 1118780, at *3 (D.N.J. Apr. 3, 2012).

28

NOTICE OF REMOVAL

14.    The fraudulent misjoinder doctrine permits the Court to ignore the citizenship of non-diverse plaintiffs who fail to "make[ ] out at least one claim that arises out of the same transaction or occurrence or series of transactions or occurrences as the other plaintiffs." *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, Nos. 00 Civ. 2843 (LAK), 01 Civ. 4010, 2002 WL 31496228, at *1 (S.D.N.Y. Nov. 7, 2002).[3] This doctrine was first articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). *See also In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002); *In re Benjamin Moore & Co.*, 318 F.3d 626, 628 (5th Cir. 2002); *In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058 (E.D. Ark. 2006); *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003); *Greene*, 344 F. Supp. 2d at 684-85; *Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804, 808 (S.D. Miss. 2002), *abrogated on other grounds*, *Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868, 873 (S.D. Miss. 2004).

15.    In cases where plaintiffs allege injuries from ingesting pharmaceutical products, courts have found that plaintiffs who fail (like Plaintiffs here) to allege that they received the product from the same source, at the same point in time, for similar periods of time, resulting in similar injuries, were fraudulently joined. *In re Rezulin*, 2002 WL 31496228, at *1; *In re Diet Drugs*, 294 F. Supp. 2d at 679 (finding misjoinder and severing the claims where "plaintiffs reside[d] in various states throughout the country, and were prescribed different diet drugs by different doctors at different times"); *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD), No. 03-2931, 2003 WL 22341303, at *4 (D. Minn. 2003) (severing the misjoined plaintiff after concluding

---

[3]    Defendants recognize that some district courts in the Northern District of California have declined to adopt the fraudulent misjoinder doctrine. *See, e.g., Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1171-72 (N.D. Cal. 2003). Other district courts in the Ninth Circuit have adopted the theory, however, and the Ninth Circuit and the Supreme Court have not directly addressed the issue. Substantial precedent from other circuits, including that cited in the text, supports applying the theory. *See Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503-05 (E.D. Cal. 2008) (finding fraudulent misjoinder of claims); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) (adopting fraudulent misjoinder theory). In the August 10, 2012 remand order, the Court in *Caouette* erroneously applied the fraudulent misjoinder doctrine (which asks whether the party in question has been procedurally misjoined) by conflating it with the doctrine of fraudulent joinder (which asks whether the claim in question has merit). *Caouette v. Bristol-Myers Squibb Co.*, 2012 WL 3283858, at *7 (N.D. Cal. Aug. 10, 2012). See *infra* Section II.B. for a background discussion of the *Caouette* case.

that "these claims have been misjoined, and that such misjoinder should not defeat diversity

jurisdiction"); *In re Diet Drugs Prods. Liab. Litig.*, No. Civ. A. 98-20478, 1999 WL 554584, at *3-4

(E.D. Pa. July 16, 1999) (dismissing non-diverse plaintiffs' claims and finding that plaintiffs who

purchased pharmaceutical products from different sources were not properly joined); *In re Prempro*,

417 F. Supp. 2d at 1060 (finding fraudulent misjoinder when "[t]he only thing common among

Plaintiffs is that they took an HRT drug-but not even the same HRT drug. Plaintiffs are residents of

different states and were prescribed different HRT drugs from different doctors, for different

lengths of time, in different amounts, and suffered different injuries").

    16.    Plaintiffs' claims plainly do not arise out of the same "transaction or series of

transactions" as required for proper joinder. *See* Fed. R. Civ. P. 20(a)(1) ("Persons may join in one

action as plaintiffs if: (a) they assert any right to relief jointly, severally, or in the alternative with

respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;

and (b) any question of law or fact common to all plaintiffs will arise in the action.").[4] *See Adams*

*v. I-Flow Corp.*, No CV09-09550 R(SSx), 2010 WL 1339948, at *8 (C.D. Cal. Mar. 30, 2010)

(finding the claims of 141 plaintiffs to be misjoined when they alleged injuries from "separate

shoulder surgeries over the span of a ten (10) year period . . . performed in different hospitals

located in thirty-seven (37) states and Canada"). Plaintiffs do not allege that they received Plavix®

from the same prescribing physician, that they were prescribed Plavix® for a common condition, or

that they all used Plavix® for similar amounts of time. They also do not allege that the same drug

labeling -- the warnings -- were in effect during the periods of time each of them took the drug.

They do not even allege the same type of Plavix®-related injuries.[5]

---

[4]    Federal and California joinder rules are substantially the same. Under both rules, joinder of
plaintiffs in one action is appropriate only where the matters to be litigated arise from the "same
transaction or series of transaction" *and* they involve "any common question of law or fact." Fed.
R. Civ. P. 20(a)(1); Cal. Code Civ. Proc. § 378.

[5]    *See Alday v. Organon USA, Inc.*, Nos. 4:09CV1415 RWS, 4:08MD1964 RWS, 2009 WL
3531802, at *1-2 (E.D. Mo. Oct. 27, 2009) (severing and dismissing plaintiffs because "Plaintiffs'
injuries did not arise out of the same transaction or occurrence. Each Plaintiff was injured at
different times in different states allegedly from their use of NuvaRing that was presumably
prescribed by different healthcare providers. Nor are Plaintiffs' injuries all the same"); *Boschert v.*
*Pfizer, Inc.*, No. 4:08-CV-1714 CAS, 2009 WL 1383183, at * 3-4 (E.D. Mo. May 14, 2009); *Cumba*
*v. Merck & Co.*, No. 08-CV-2328 (DMC), 2009 WL 1351462, at *1 (D.N.J. May 12, 2009) ("[I]n
addition to being linked by the same drug and type of injury, plaintiffs must also demonstrate

(Footnote Cont'd on Following Page)

- 6 -

1    17.   Plaintiffs' misjoinder of a non-diverse plaintiff frustrates both the underlying

2    purpose of the joinder rules and Defendants' right to removal and, therefore, that Plaintiff should be

3    ignored for purposes of establishing diversity jurisdiction over this case. *In re Rezulin Prods. Liab.*

4    *Litig.*, 2002 WL 31496228, at *1 ("Joinder 'of several plaintiffs who have no connection to each

5    other in no way promotes trial convenience or expedites the adjudication of the asserted claims.'")

6    (citations omitted).

7              **ii.   Removal Is Proper Because No Forum Defendant Has Been Served**

8    18.   Pursuant to 28 U.S.C. § 1441(b), this action is removable because no party in interest

9    properly joined and served as a defendant is a citizen of California, the state in which this action

10   was brought (a "forum defendant"). *See* 28 U.S.C. § 1441(b) (providing that non-federal question

11   cases "shall be removable only if none of the parties in interest properly joined ***and served*** as

12   defendants is a citizen of the State in which the action is brought") (emphasis added).

13   19.   Defendant McKesson is alleged in the Complaint to be a citizen of California.  As of

14   the time of filing of this Notice, however, McKesson had not been served with process.  Removal is

15   proper where there is complete diversity, and no forum defendant has yet been served. *City of Ann*

16   *Arbor Employees' Retirement Sys. v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, at *8 (N.D.

17   Cal. Mar. 9, 2007) (denying plaintiff's motion for remand, where, as here, a non-forum defendant

18   had removed the action when the alleged forum defendants had not been properly joined and

19   served); *Carreon v. Alza Corp.*, No. C 09–5623 RS, 2010 WL 539392, at *1 (N.D. Cal. Feb. 9,

20   2010) (same); *Waldon v. Novartis Pharm. Corp.*, No. C07-01988 MJJ, 2007 WL 1747128, at *2

21   (N.D. Cal. June 18, 2007) (denying remand when "McKesson was not properly 'joined and served'

22   at the time of removal as required by 28 U.S.C. Section 1441(b).") (emphasis added). *See also*

23   *Regal Stone Ltd. v. Longs Drug Stores Cal., LLC*, No. 11–4540 SC, 2012 WL 685756, at *4 (N.D.

24   Cal. May 4, 2012) (denying remand after the passage of the Federal Courts Jurisdiction and Venue

25

26

27   (Footnote Cont'd From Previous Page)
     similarities with respect to, *inter alia,* the source of the drug, the length of the exposure to the drug,
     the type of exposure, the type of resulting injury, and the plaintiffs' physical state at the time of
28   ingestion.") (citations omitted).

1   Clarification Act, finding "[t]he Court is therefore bound to take Congress's preservation of Section

2   1441's 'properly joined and served' language as an endorsement").[6]

3        20.    In the present case, because Plaintiffs have not served any forum defendant, any such

4   defendant's alleged citizenship in California is not an impediment to removal under 28 U.S.C.

5   § 1441(b).

6            iii.    **Fraudulent Joinder of Defendant McKesson Corporation**

7        21.    In addition and in the alternative, Defendant McKesson Corporation is not a proper

8   party to this case, and its California citizenship should therefore be disregarded for purposes of

9   removal, because it has been fraudulently joined.  28 U.S.C. § 1441(b) (diversity jurisdiction is

10  proper "if none of the parties in interest *properly joined* and served as Defendants is a citizen of the

11  State in which such action is brought") (emphasis added).

12       22.    A defendant is fraudulently joined and its presence in the lawsuit is ignored for

13  purposes of determining diversity where no viable cause of action has been stated against it. *See*

14  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (a defendant is fraudulently

15  joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is

16  obvious according to the settled rules of the state") (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d

17  1336, 1339 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)

18  (same).

19       23.    Defendant McKesson is fraudulently joined because (1) Plaintiffs have failed to

20  allege that McKesson distributed Plavix® to *these* Plaintiffs, and have not otherwise made

21  allegations of *any* tortious conduct on the part of McKesson, and (2) McKesson, as a mere

22  distributor, is not liable under any cause of action alleged in the complaint.

23

24

25  [6]    Congress recently enacted legislation reaffirming that an action may be removed on the
    basis of diversity jurisdiction when a forum defendant is not properly joined or served at the time of
26  removal.  The "Federal Courts Jurisdiction and Venue Clarification Act of 2011" amended the
    removal and remand procedures in 28 U.S.C. § 1441, but retained the language in section 1441(b)
27  that bars removal only if any "of the parties in interest *properly joined and served* as defendants is a
    citizen of the State in which such action is brought." *See* Federal Courts Jurisdiction and Venue
28  Clarification Act of 2011, Pub. L. No. 112-63 § 103, 125 Stat. 758, 760 (2011) (emphasis added).

- 8 -

1    24.    *First*, the Complaint is completely devoid of allegations concerning McKesson as

2  they relate to these Plaintiffs. Plaintiffs allege only that McKesson is a distributor of Plavix®, Ex.

3  A, ¶ 1, but never allege that McKesson distributed the Plavix® that Plaintiffs used and that caused

4  their specific injuries.

5    25.    In other pharmaceutical actions, courts have found drug distributors -- and

6  McKesson in particular -- to have been fraudulently joined when there was no allegation in the

7  complaint that the distributor disseminated the drugs that caused the plaintiffs' injuries. *See Aronis*

8  *v. Merck & Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005)

9  ("The complaint does not state a cause of action against McKesson, and that failure is obvious . . . .

10  Plaintiff makes no allegation that McKesson ever handled the specific pills that were allegedly the

11  cause of her injuries."); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant*

12  *Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2010 WL 3937414, at *7, 9 (S.D. Ill. Oct. 4,

13  2010) (because plaintiffs only alleged that McKesson "may have distributed the subject drugs," they

14  failed to "bring sufficient allegations as to McKesson under any traditional tort theory . . . [and] the

15  Court ha[d] no choice but to conclude that there [wa]s no reasonable possibility that a state court

16  would find that the Complaints . . . state a cause of action against McKesson").

17    26.    For example, in *Aronis*, the plaintiff filed a product liability complaint against drug

18  manufacturer Merck and pharmaceutical distributor McKesson arising from her use of the

19  prescription drug Vioxx. *Aronis*, 2005 WL 5518485, at *1. As to the in-state defendant McKesson,

20  the plaintiff alleged only that "Vioxx is manufactured and distributed by the defendants." *Id.* She

21  failed to make any allegations that McKesson distributed the drugs that she specifically ingested

22  and that caused her injuries, but instead argued that remand was appropriate because McKesson was

23  a major distributor of Vioxx. *Id.* The court disagreed and found McKesson to be fraudulently

24  joined. *Id.* ("The allegation that McKesson is a major distributor of Vioxx, even though taken as

25  true at this stage, is not enough to support a claim against McKesson. To state a claim against a

26  defendant, a plaintiff must allege a causal connection between the injury and the conduct of that

27  defendant.") (citations omitted).

28

NOTICE OF REMOVAL

1    27.    Likewise here, Plaintiffs fail to connect McKesson to their injuries. The only

2  allegation in the Complaint concerning McKesson's role merely states: "This action involve [sic]

3  claims . . . arising from the use of Plavix, a pharmaceutical compound researched, designed,

4  formulated, compounded, tested, manufactured, produced, processed, assembled, inspected,

5  distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise

6  placed in the stream of interstate commerce by Defendants Bristol-Meyers Squibb Company

7  ("BMS") [sic]; Sanofi-Aventis U.S. LLC. [sic]; Sanofi-Aventis U.S., Inc. [sic]; and/or Sanofi-

8  Synthelabo, Inc. [sic] ("Sanofi") and marketed, sold, and distributed by Defendant McKesson

9  Corporation ("McKesson") . . . ." Ex. A, ¶ 1.[7] Notably, the Complaint does not even state that

10  McKesson distributed the Plavix® Plaintiffs specifically ingested, and the general allegation that

11  McKesson is a distributor of Plavix® is insufficient. *Aronis*, 2005 WL 5518485, at *1. Plavix® is

12  distributed nationwide and in California by multiple distributors, in addition to McKesson, so it

13  cannot be taken for granted that any Plaintiff actually took pills distributed by McKesson. Decl. of

14  Todd May, ¶ 3 (Ex. B).

15    28.    Plaintiffs also cannot rely on their common allegations against "all Defendants." *See*

16  Cal. R. Ct. 2.112 (each cause of action must specifically state "[t]he party or parties to whom it is

17  directed (e.g., 'against defendant Smith')"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,

18  MDL No. 1047, No. C02-423R, 2002 WL 34418423, at *2-3 (W.D. Wash. Nov. 27, 2002) (in

19  product liability action involving over-the-counter medication, court found fraudulent joinder

20  because generalized allegations directed toward "defendants" or "all defendants" were insufficient

21  to state a claim against defendant retailer). Plaintiffs' failure to make sufficient material and

22  particular allegations against McKesson is indicative of fraudulent joinder. *See, e.g., Brown v.*

23  *Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (in-state defendants fraudulently

24  joined where "no material allegations against [the in-state defendants] were made"); *Lyons v. Am.*

25  *Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (there

26

27    [7]    McKesson is specifically named in only two additional paragraphs in the Complaint. Ex. A,
28  ¶¶ 10, 90. These paragraphs identify McKesson's citizenship and allege that venue is proper on
     account of that citizenship. *Id.* ¶¶ 10, 90.

is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the

plaintiff to "set forth any specific factual allegations" against them).

29.    Moreover, there is no strict liability claim against a *pharmaceutical* distributor who

supplies but does not manufacture or design the drug. *See In re Rezulin Litig. (Skinner)*, No. CV

03-1643-R(RZX), 2003 WL 25598915, at *1 (C.D. Cal. Apr. 28, 2003) ("The Court further finds

that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity

which distributed this FDA-approved medication to pharmacists in California."). In California,

pharmacists are not liable for supplying FDA-approved prescription drugs because doing so may

cause some pharmacies to "restrict availability by refusing to dispense drugs which pose even a

potentially remote risk of harm, although such medications may be essential to the health or even

the survival of patients." *See Murphy v. E.R. Squibb & Sons, Inc.*, 710 P.2d 247, 40 Cal. 3d 672

(1985). The same rationale applies to a pharmaceutical distributor. If a distributor like McKesson

were held strictly liable for the drugs it distributes, there would be a similar chilling effect limiting

the availability of important prescription drugs.[8] Indeed, Defendants BMS and Sanofi have been

unable to locate a single case -- in California or elsewhere -- finding a *pharmaceutical* distributor

strictly liable for an alleged injury to a person taking a prescription drug.

30.    ***Second***, the claims against McKesson -- which are essentially all failure-to-warn --

are preempted under the Supreme Court's decision in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567

(2011). *See, e.g.*, Ex. A, ¶ 122 (in design defect cause of action, alleging that Plavix® was

"defective due to inadequate warning or instruction"); *id.* ¶ 141 (in negligence cause of action,

alleging that Defendants were "negligent in the . . . warning . . . of Plavix"); *id.* ¶ 149 (in breach of

implied warranty cause of action, alleging that "Plavix was unaccompanied by warnings of its

dangerous propensities"); *id.* ¶ 154 (in breach of express warranty cause of action, alleging that

"Plavix was unaccompanied by warnings of its dangerous propensities"); *id.* ¶ 162 (in deceit by

---

[8]    Defendants recognize that district courts in the Ninth Circuit have previously rejected the
distributor-pharmacy analogy for fraudulent joinder purposes. *See, e.g.*, *Black v. Merck & Co, Inc.*,
No. CV 03-8730 NM(AJWx), 2004 WL 5392660, at *3-4 (C.D. Cal. Mar. 3, 2004). The Ninth
Circuit, however, has not considered the issue and "California case law . . . has not addressed
whether distributors of prescription drugs can be strictly liable for failure to warn." *Id.*

1  concealment cause of action, alleging that Defendants had "unique knowledge and expertise

2  regarding the defective nature of Plavix" but failed to disclose that Plavix® was not safe and

3  effective); *id.* ¶¶ 174-76 (in negligent misrepresentation claim, alleging that Defendants

4  disseminated false information in "the content of the labels (i.e., the product labeling) to physicians

5  through publication of the drug's monograph in the PDR, and otherwise [by communicating]

6  information regarding the drug through advertising, distribution of promotional materials, sales

7  presentations by company sales representatives, group sales representatives, and sponsored

8  publications and seminar speakers"); *id.* ¶ 182 (in fraud by concealment cause of action, alleging

9  that Defendants "had the duty and obligation to disclose . . . the true facts concerning Plavix, that is,

10  that Plavix was dangerous and defective" but concealed this information); *id.* ¶ 200 (in Violation of

11  Cal. Bus. & Prof. Code § 17200 cause of action, alleging that Defendants engaged in unlawful

12  practice, including failing to "updat[e] labels and timely and properly implement[ ] label changes");

13  *id.* ¶ 208(e) (same under Violation of Cal. Bus. & Prof. Code § 17500 claim); *id.* ¶ 219(d) (same

14  under Violation of Cal. Civ. Code § 1750 claim); *id.* ¶ 222 (in wrongful death cause of action,

15  alleging that decedents died as a result of taking Plavix®, a drug "labeled" by Defendants).

16      31.    Just last year, the Supreme Court clarified the preemption doctrine as it relates to

17  manufacturers of generic drugs. In *Mensing*, two plaintiffs brought product liability actions against

18  manufacturers of generic prescription drugs. *Id.* at 2573. The generic manufacturers argued that,

19  under federal drug regulations, they are "prevented [ ] from independently changing their generic

20  drugs' safety labels." *Id.* at 2577. Consequently, they argued, holding them liable under state law

21  for failure to "adequately and safely label their products," would directly conflict with labeling

22  requirements under federal law. *Id.* The Supreme Court agreed: Because generic manufacturers

23  are unable to comply with both state and federal law, state failure-to-warn claims against generic

24  drug manufacturers must be preempted. *Id.* at 2577-78, 2581 ("If the Manufacturers had

25  independently changed their labels to satisfy their state-law duty [to attach a safer label], they would

26  have violated federal law.").

27      32.    The same preemption analysis articulated by the Supreme Court in *Mensing* works to

28  bar claims against pharmaceutical distributors that stand even further removed than generic

NOTICE OF REMOVAL

1   manufacturers from the ability to change drug labeling and other warnings. The crux of Plaintiffs'

2   claims against McKesson is that, independent of BMS and Sanofi, McKesson should have warned

3   about the risks not included in the Plavix® product labeling. Had it done so, McKesson would have

4   been subject to potential civil and/or criminal penalties for "misbranding." 21 U.S.C. §§ 333, 334.

5           33.     FDA regulations on misbranding prohibit any person, including a pharmaceutical

6   distributor, from issuing any warning that is not consistent with the drug's FDA-approved labeling.

7   21 C.F.R. § 201.100(d)(1). Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et*

8   *seq.* (the "FDCA"), when the FDA approves a drug for marketing, it also approves the drug's

9   labeling, including information about the drug's potential risks and benefits. 21 U.S.C. § 355(d).

10  All other materials disseminated about a drug's risks and benefits, including promotional materials

11  and "Dear Doctor" letters, must be "consistent with and not contrary to . . . the approved or

12  permitted labeling."[9] 21 C.F.R. § 201.100(d)(1); Br. for United States as Amicus Curiae Supp.

13  Resp'ts at 4-5, *Mensing*, 131 S. Ct. 2567 (2011); 73 Fed. Reg. 2848, 2850 n.3 (2008) ("Federal law

14  governs not only what information must appear in labeling, but also what information may not

15  appear.") (attached as Exhibit C). If a distributor issued warnings about a drug that were not

16  approved by the FDA and that were inconsistent with the approved labeling, it would subject itself

17  to possible civil and/or criminal penalties for misbranding.[10] 21 U.S.C. §§ 333, 334. In other

18  words, if McKesson had gone beyond the approved labeling for Plavix®, it may have been liable

19  for federal penalties for misbranding.

---

[9]     21 U.S.C. § 321(m) (labeling includes "all labels and other written, printed, or graphic matter"); 21 C.F.R. § 1.3 (same). Thus, the term "labeling" includes more than the printed package insert.

[10]    The FDCA and regulations provide that a drug is misbranded if its labeling is "false and misleading in any particular." 21 U.S.C. § 352(a); *id.* § 321(n); *id.* § 331(a), (b), (k); 21 C.F.R. § 201.6(a). A statement about a drug's risks would be considered "false and misleading" if it has not been found by the FDA to be properly substantiated. 71 Fed. Reg. 3922, 3935 (2006) ("[A]dditional disclosures of risk information can expose a manufacturer to liability under the [FDCA] if the additional statement is unsubstantiated or otherwise false or misleading."); *id.* (statements that the "FDA has considered and found scientifically unsubstantiated" would "render the drug misbranded under the act [21 U.S.C. § 352]"). By definition, an unapproved warning by a distributor that is inconsistent with the approved drug labeling would not have been found substantiated by the FDA and, thus, would likely constitute misbranding.

34.    Nor could McKesson change the approved product labeling.  Only the party who submits the New Drug Application (the "NDA") to obtain FDA approval to market a drug can seek to change the drug's labeling after initial approval.[11]  21 C.F.R. § 314.71(a) ("*Only the applicant may submit a supplement to an application.*") (emphasis added); *id.* § 314.70(a)(4) ("The *applicant* must promptly revise all promotional labeling and advertising to make it consistent with any labeling change implemented . . . .") (emphasis added).  Here, McKesson is not the applicant[12] for the Plavix® NDA and, therefore, has no authority to seek any changes to the drug's labeling.[13]

35.    For this very reason -- *i.e.*, that a distributor is not the NDA holder -- the District of New Jersey found the failure-to-warn claims against a distributor of a brand-name prescription drug to be preempted.  In *In re Fosamax*, plaintiffs named distributors of Fosamax -- Watson

---

[11]    Major labeling changes require the FDA's prior approval through submission of a Prior Approval Supplement ("PAS").  21 C.F.R. § 314.70(b).  Certain other changes may be made without advanced FDA approval through the Changes Being Effected ("CBE") regulations.  21 C.F.R. § 314.70(c).  The federal regulations make clear that only the NDA holder can apply for these supplemental changes.  21 C.F.R. § 314.70(a) (requiring "*the applicant*" and "*holder of an approved application*" to submit changes to the FDA); *id.* § 314.70(b)(3) ("*The applicant* must obtain approval of a supplement from FDA [for major changes under the PAS procedure]."); *id.* § 314.70(c)(6) ("*[T]he holder of an approved application* may commence distribution of the drug product involved upon receipt by the agency of the supplement for the change [under the CBE procedure].") (emphases added).  *See Mensing*, 131 S. Ct. at 2575 ("The FDA denies that the [generic] Manufacturers could have used the CBE process to unilaterally strengthen their warning labels. . . . We defer to the FDA's interpretation of its CBE and generic labeling regulations.") (citations omitted); Ex. C, at 12 ("[Generic manufacturers] could not properly have invoked the CBE or PAS process.").  *See also* 21 U.S.C. § 355(o)(4)(A) (FDA contacts the brand-name manufacturer to initiate safety changes in drug labeling).

[12]    FDA, Drugs@FDA Glossary of Terms, http://www.fda.gov/Drugs/informationondrugs/ucm079436.htm (last visited Aug. 24, 2012) ("Company:  The company (also called applicant or sponsor) submits an application to FDA for approval to market a drug product in the United States.").

[13]    Moreover, McKesson is not required to exert pressure to make labeling changes on third parties who can implement such changes, namely the NDA holder or the FDA.  The Supreme Court in *Mensing* rejected the argument that preemption turns on whether a defendant who is not the NDA applicant asked the FDA to initiate any labeling changes.  *Mensing*, 131 S. Ct. at 2579 ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it. . . . We can often imagine that a third party or the Federal Government *might* do something that makes it lawful for a private party to accomplish under federal law what state law requires of it."); *id.* at 2580 ("To consider in our pre-emption analysis the contingencies inherent in these cases . . . would be inconsistent with the *non obstante* provision of the Supremacy Clause.").

- 14 -

Pharmaceuticals and Watson Laboratories ("Watson") -- as defendants in a product liability suit. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), 2012 WL 181411, at *1 (D.N.J. Jan 17, 2012). To circumvent *Mensing*, instead of relying on Watson's role as a generic manufacturer, Plaintiffs also alleged that that "Defendant Watson was what is known as an authorized distributor of branded Fosamax." *Id.* Nevertheless, Watson argued, and the District of New Jersey agreed, that *Mensing* should apply because "[a]s a distributor of Fosamax, Watson has no power to change Fosamax labeling. That power lies with the applicant who filed the New Drug Application (NDA) seeking approval to market Fosamax." *Id.* at *3 (citations omitted). *See also Stevens v. Cmty. Health Care Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, DAVA had no ability to change labeling or warnings and thus, like a generic manufacturer, DAVA cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

36.    Likewise here, McKesson, who is alleged simply to be a distributor of Plavix®, cannot be liable under the state law theories asserted in the Complaint. McKesson has no ability lawfully to alter the Plavix® labeling, and to subject McKesson to liability here would conflict directly with federal law governing prescription drug labeling. Such state claims are therefore preempted, and Plaintiffs have not stated a viable claim against McKesson.[14]

37.    The allegations in the *Walden* Complaint are virtually identical to eight other cases previously removed to this Court. On March 9 and 12, 2012, eight complaints involving 659 plaintiffs from 32 states in San Francisco County were filed against BMS, McKesson, and Does 1-100.[15] BMS recognizes that on August 10, 2012, the Honorable Judge Edward Chen of this Court

---

[14]    Although some California federal courts have previously rejected arguments that pharmaceutical distributors were fraudulently joined, these cases largely predate *Mensing* and/or did not directly address whether *Mensing* barred failure-to-warn claims against McKesson. The Supreme Court and the Ninth Circuit have not considered whether implied preemption bars product liability claims against a distributor of prescription drugs in the fraudulent joinder context.

[15]    *See Francis W. Adams et al. v. Bristol-Myers Squibb Company et al.*, No. C-12-1819 EMC (N.D. Cal.); *Ricky L. Alexander et al. v. Bristol-Myers Squibb Company et al.*, No. C-12-1820 EMC (N.D. Cal.); *Gwendolan E. Ailes et al. v. Bristol-Myers Squibb Company et al.*, No. C-12-1822 EMC (N.D. Cal.); *Virgil S. Anderson et al. v. Bristol-Myers Squibb Company et al.*, No. C-12-1815 EMC (N.D. Cal.); *David D. Applen et al. v. Bristol-Myers Squibb Company et al.*, No. C-12-1818 EMC (N.D. Cal.); *Viola J. Bales et al. v. Bristol-Myers Squibb Company et al.*, No. C-12-1821 EMC (N.D. Cal.); *Philip Bryan et al. v. Bristol-Myers Squibb Company et al.*, No. 3:12-cv-01816-

(Footnote Cont'd on Following Page)

- 15 -

1    remanded those other Plavix® actions, but respectfully disagrees with that decision. *Caouette v.*

2    *Bristol-Myers Squibb Co.*, No. C-12-1814 EMC, 2012 WL 3283858 (N.D. Cal. Aug. 10, 2012).

3    The Court's decision did not squarely address whether the *Mensing* rationale applies to preempt the

4    plaintiffs' design defect claims against McKesson, an issue which must be decided here to

5    determine whether jurisdiction is proper. *Id.* at *5 & n.5.[16] On August 20, 2012, Defendant BMS

6    filed a petition for leave to appeal those remand orders, which is currently pending.

                      iv.     **Amount-in-Controversy**

8         38.     The amount-in-controversy for diversity removal is satisfied. Although the

9    Complaint seeks unspecified compensatory damages,[17] it is facially apparent from the Complaint

10   that the amount-in-controversy between each Plaintiff and Defendants exceeds the sum or value of

---

(Footnote Cont'd From Previous Page)

12   EMC (N.D. Cal); and *James Caouette et al. v. Bristol-Myers Squibb Company et al.*, No. 3:12-cv-01814-EMC (N.D. Cal).

[16]   *Mensing* applies to bar all thirteen causes of action in the Complaint, including design defect, even if the Court views the claims as distinct from the failure-to-warn count. Courts have overwhelmingly applied the *Mensing* analysis to preempt design defect, manufacturing defect, negligence, fraud, and warranty claims. *See, e.g., Truddle v. Wyeth, LLC*, No. 2:11-CV 00207-GHD-SAA, 2012 WL 3338715, at *1, 4 (N.D. Miss. Aug. 14, 2012) (negligence, strict liability, breach of warranties, misrepresentation and fraud, and negligence per se claims against generic manufacturer were preempted); *In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484-85 (E.D.N.Y. 2012) (design defect, negligence, and warranty claims against generic manufacturer were preempted); *Coney v. Mylan Pharms., Inc.*, No. 6:11-cv-35, 2012 WL 170143, at *7-8 (S.D. Ga. Jan. 19, 2012) (fraud claim against generic manufacturer was preempted); *Moore v. Mylan, Inc.*, No. 1:11–CV–03037–MHS, 2012 WL 123986, at *6-7 (N.D. Ga. Jan. 5, 2012) (design defect claim against generic manufacturer was preempted); *Gross v. Pfizer, Inc.*, 825 F. Supp. 2d 654, 659 (D. Md. 2011), *reconsideration denied* (Jan. 27, 2012) (negligence claims against generic manufacturer were preempted); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, No. Civ. 08-008 (GEB-LHG), 2011 WL 5903623, at *6, 8, 9 (D.N.J. Nov. 21, 2011) (design defect, negligence, breach of warranty, fraud, misrepresentation, failure to conform to representation, negligent misrepresentation, and consumer fraud claims against generic manufacturers were all preempted); *Metz v. Wyeth, LLC*, No. 8:10–CV–2658–T–27AEP, 2011 WL 5024448, at *3-4 (M.D. Fla. Oct. 20, 2011) (negligence, strict liability, warranty, fraud, and misrepresentation claims were disguised as failure-to-warn claims, and therefore preempted); *Schrock v. Pliva USA, Inc.*, No. CIV–08–453–M, 2011 WL 6130924, at *2 (W.D. Okla. Dec. 8, 2009) (warranty claim against generic manufacturer was preempted). The Court in *Caouette* granted remand without analyzing the federal statutes and regulations governing the design and formulation of drugs, and relied on *Bartlett v. Mutual Pharmaceutical Co.*, 678 F.3d 30 (1st Cir. 2012), a case in which the First Circuit admitted that its holding was in tension with *Mensing*. A petition for certiorari is now pending in *Bartlett*.

[17]   California Civil Procedure Code §§ 422.30, 425.10(b) prohibits plaintiffs in personal injury or wrongful death actions from stating the amount of damages demanded, but requires plaintiffs to state only whether the case is a "limited civil case" under $25,000. Plaintiffs here designated the case as "unlimited (amount demanded exceeds $25,000)" in the civil case cover sheet.

1   $75,000, exclusive of interest and costs. The Complaint includes thirteen causes of action, and

2   alleges that Plaintiffs' use of Plavix® caused "severe physical, economic and emotional" injuries,

3   including death. *See, e.g.*, Ex. A, ¶¶ 1, 12, 59. Plaintiffs seek recovery for compensatory damages,

4   future medical and incidental expenses, past and future lost wages, future medical monitoring,

5   punitive damages, past and future emotional distress, disgorgement of profits, loss of consortium,

6   and costs. Ex. A, at 43-44 (Prayer for Relief).

7          39.    The allegations in the Complaint are substantially similar to other complaints filed in

8   or removed to federal court and seeking more than $75,000 in damages. *See* Compl. ¶ 215, *Chesney*

9   *v. Bristol-Myers Squibb Co.*, No. 1:11-cv-3246 (KAM-VVP) (E.D.N.Y. July 5, 2011) (Ex. D)

10  (seeking at least $3 million in damages); First Am. Compl. ¶ 6, *LaBarre v. Bristol-Myers Squibb*

11  *Co.*, No. 3:06-cv-06050 (FLW-TJB) (D.N.J. May 1, 2009) (Ex. E) (alleging federal jurisdiction

12  "because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00),

13  exclusive of interest and costs"); First Am. Compl., *Mills v. Bristol-Myers Squibb Co.*, No. 2:11-cv-

14  00968 (removed D. Ariz. May 16, 2011) (Ex. F).

15         40.    On these facts, Defendants reasonably assert that the amount-in-controversy for each

16  Plaintiff's claim in these actions exceeds $75,000, exclusive of interest and costs. *See, e.g.*,

17  *Kammerdiener v. Ford Motor Co.*, No. ED CV 09-2180 PSG (VBKx), 2010 WL 682297, at *2

18  (C.D. Cal. Feb. 24, 2010) (complaint seeking damages for wrongful death and personal injuries met

19  amount-in-controversy); *Moore v. Goodyear Tire & Rubber Co.*, No. CV-11-01174-PHX-NVW,

20  2011 WL 3684508, at *3 (D. Ariz. Aug. 23, 2011) (amount-in-controversy met given that the case

21  "involves the alleged wrongful deaths of three persons and serious injury to several others. Such

22  cases, if successful, are generally known to produce verdicts far in excess of $75,000").

23         **B.     JURISDICTION PURSUANT TO CAFA**

24         41.    This case is substantially identical to six other Plavix® cases filed by the same

25  Plaintiffs' counsel, in the span of 5 days, which in the aggregate number more than 100 plaintiffs.

26

27

28

- 17 -

42.    This case is also substantially identical to eight other Plavix® cases filed in the same court by different counsel, almost simultaneously, and that Plaintiffs asked be treated as "related" cases on the basis, among others, that they shared common questions of "class certification."[18]

43.    Defendant BMS removed those eight previously filed cases on April 11, 2012 pursuant to the Class Action Fairness Act ("CAFA"), arguing that Plaintiffs had implicitly proposed to try the cases together under the circumstances. The Court remanded the eight actions on August 10, 2012, relying on the Ninth Circuit's decision in *Tanoh v. Dow Chemical Co.*, 561 F.3d 945 (9th Cir. 2009). On August 20, 2012, Defendant BMS petitioned for leave to appeal to the Ninth Circuit.

44.    Defendants BMS and Sanofi now assert CAFA as an additional basis of removal to preserve its position should BMS prevail on appeal in those cases. *See* 28 U.S.C. §§ 1332(d)(11)(B), 1453(b) (permitting removal of "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," and in which CAFA's other jurisdictional requirements such as minimal diversity and amount-in-controversy are met).

45.    The other requirements of CAFA are met here for the same reasons they were satisfied in the prior actions. There is minimal diversity, any Plaintiff seeks more than $75,000 and collectively the hundreds of Plaintiffs meet the $5 million aggregate amount-in-controversy, and the actions share common questions of fact and law. In this regard, BMS and Sanofi further refer the Court to BMS' Notice of Removal in those cases, which they incorporate herein by reference. Notice of Removal, *Caouette et al. v. Bristol-Myers Squibb Co. et al.*, No. 12-1814 (N.D. Cal. Apr. 11, 2012) (Ex. G)

## III.    PLAINTIFFS' CITIZENSHIP

46.    Plaintiff Virgil Walden, Jr. is a citizen of the State of Alabama. Ex. A, ¶ 12.

47.    Plaintiff Ronald Thompson is a citizen of the State of Alabama. *Id.* ¶ 13.

48.    Plaintiff James Herring is a citizen of the State of Alabama. *Id.* ¶ 14.

---

[18]    *See* Pls.' Notice of Related Case, *Caouette v. Bristol-Myers Squibb Co.*, No. 3:12-cv-01814-EMC (N.D. Cal. Apr. 26, 2012) (Ex. H).

1   49. Plaintiff Connie Coleman is a citizen of the State of Alabama. *Id.* ¶ 15.

2   50. Plaintiff Robert Hendrix is a citizen of the State of Alabama. *Id.* ¶ 16.

3   51. Plaintiff Edna Parnell, as a successor-in-interest on behalf of the Estate of Eddie

4 Robinson, is a citizen of the State of Alabama. *Id.* ¶ 17.

5   52. Plaintiff Mary Johnson is a citizen of the State of Alabama. *Id.* ¶ 18.

6   53. Plaintiff Rebecca Turman, as a successor-in-interest on behalf of the Estate of

7 Charles Turman, is a citizen of the State of Alabama. *Id.* ¶ 19.

8   54. Plaintiff Ila Jordan, as a successor-in-interest on behalf of the Estate of Harold

9 Jordan, is a citizen of the State of Alabama. *Id.* ¶ 20.

10   55. Plaintiff Melanie Johnson is a citizen of the State of Alabama. *Id.* ¶ 21.

11   56. Plaintiff Robert Weaver is a citizen of the State of Alabama. *Id.* ¶ 22.

12   57. Plaintiff William Thomas is a citizen of the State of Alabama. *Id.* ¶ 23.

13   58. Plaintiff Laura Murphy is a citizen of the State of West Virginia. *Id.* ¶ 24.

14   59. Plaintiff Teresa Lundy is a citizen of the State of Arkansas. *Id.* ¶ 25.

15   60. Plaintiff Vickie Steward is a citizen of the State of Arkansas. *Id.* ¶ 26.

16   61. Plaintiff Mavis Sanders is a citizen of the State of Arkansas. *Id.* ¶ 27.

17   62. Plaintiff Leona Byrd is a citizen of the State of Arkansas. *Id.* ¶ 28.

18   63. Plaintiff Cecil Kelsey is a citizen of the State of Arkansas. *Id.* ¶ 29.

19   64. Plaintiff Rosella Walker is a citizen of the State of New York. *Id.* ¶ 30.

20   65. Plaintiff Clifford Abel is a citizen of the State of Arizona. *Id.* ¶ 31.

21   66. Plaintiff Willy Niedt, Jr. is a citizen of the State of Arizona. *Id.* ¶ 32.

22   67. Plaintiff Herlinda Martinez is a citizen of the State of Arizona. *Id.* ¶ 33.

23   68. Plaintiff Lillie Baldovino is a citizen of the State of Arizona. *Id.* ¶ 34.

24   69. Plaintiff Rochelle Begoun, as a successor-in-interest on behalf of the Estate of

25 Hartley Begoun, is a citizen of the State of Arizona. *Id.* ¶ 35.

26   70. Plaintiff Mary Emigh is a citizen of the State of Arizona. *Id.* ¶ 36.

27   71. Plaintiff Norman Johnson is a citizen of the State of Arizona. *Id.* ¶ 37.

28   72. Plaintiff Nancie Rossinow is a citizen of the State of Arizona. *Id.* ¶ 38.

73. Plaintiff James Lee Daley is a citizen of the State of Arizona. *Id.* ¶ 39.

74. Plaintiff Beatrice Mills is a citizen of the State of Arizona. *Id.* ¶ 40.

75. Plaintiff John Crawford, as a successor-in-interest on behalf of the Estate of Pamela Crawford, is a citizen of the State of Alabama. *Id.* ¶ 41.

76. Plaintiff Andrew Harris, as a successor-in-interest on behalf of the Estate of Edna Harris, is a citizen of the State of Alabama. *Id.* ¶ 42.

77. Plaintiff George Rhynedance, III, as a successor-in-interest on behalf of the Estate of Nancy Rhynedance, is a citizen of the State of Nevada. *Id.* ¶ 43.

78. Plaintiff David Smith, as a successor-in-interest on behalf of the Estate of Sandra Smith, is a citizen of the State of California. *Id.* ¶ 44.

79. Plaintiff John Tucker is a citizen of the State of California. *Id.* ¶ 45.

80. Plaintiff Harriet Blye is a citizen of the State of California. *Id.* ¶ 46.

81. Plaintiff Elaine Madkins is a citizen of the State of California. *Id.* ¶ 47.

82. Plaintiff Lucette Brenton, as a successor-in-interest on behalf of the Estate of Charles Brenton, is a citizen of the State of California. *Id.* ¶ 48.

83. Plaintiff William Kinsinger is a citizen of the State of California. *Id.* ¶ 49.

84. Plaintiff William Metzger is a citizen of the State of California. *Id.* ¶ 50.

85. Plaintiff Shobna Desai, as a successor-in-interest on behalf of the Estate of Amrish Desai, is a citizen of the State of California. *Id.* ¶ 51.

86. Plaintiff Marsha Bates is a citizen of the State of California. *Id.* ¶ 52.

87. Plaintiff Cynthia Walker is a citizen of the State of California. *Id.* ¶ 53.

88. Plaintiff Barbara Prince, as a successor-in-interest on behalf of the Estate of Gloria Frost, is a citizen of the State of California a. *Id.* ¶ 54.

89. Plaintiff Carolyn Johnson is a citizen of the State of California. *Id.* ¶ 55.

90. Plaintiff Lawrence Thompson is a citizen of the State of California. *Id.* ¶ 56.

91. Plaintiff Nancy Neal, as a successor-in-interest on behalf of the Estate of John Neal, is a citizen of the State of California. *Id.* ¶ 57.

92. Plaintiff Wade Hampton is a citizen of the State of California. *Id.* ¶ 58.

1    93.    Plaintiff Marjorie Ann Buell is a citizen of the State of California. *Id.* ¶ 59.

2    94.    Plaintiff Jeffry Seaton is a citizen of the State of California. *Id.* ¶ 60.

3    95.    Plaintiff Lori Staley, as a successor-in-interest on behalf of the Estate of Ben Staley,

4    is a citizen of the State of California. *Id.* ¶ 61.

5    96.    Plaintiff Maria Seals is a citizen of the State of California. *Id.* ¶ 62.

6    97.    Plaintiff Claudia Serviss is a citizen of the State of California. *Id.* ¶ 63.

7    98.    Plaintiff Howard Leon Cain, as a successor-in-interest on behalf of the Estate of

8    Donna Marie Crain, is a citizen of the State of California. *Id.* ¶ 64.

9    99.    Plaintiff Katie Jones is a citizen of the State of California. *Id.* ¶ 65.

10    100.    Plaintiff Chandra Kishor is a citizen of the State of California. *Id.* ¶ 66.

11    101.    Plaintiff Randall Logsdon is a citizen of the State of California. *Id.* ¶ 67.

12    102.    Plaintiff Frisco Marshbanks, Jr. is a citizen of the State of California. *Id.* ¶ 68.

13    103.    Plaintiff Eldor Mickelson is a citizen of the State of California. *Id.* ¶ 69.

14    104.    Plaintiff Eugene Radza is a citizen of the State of California. *Id.* ¶ 70.

15    105.    Plaintiff Bruce Seaver is a citizen of the State of California. *Id.* ¶ 71.

16    106.    Plaintiff Rodney Stevens, Sr. is a citizen of the State of California. *Id.* ¶ 72.

17    107.    Plaintiff Nancy Lee Warthan is a citizen of the State of California. *Id.* ¶ 73.

18    108.    Plaintiff Thomas Burke is a citizen of the State of California. *Id.* ¶ 74.

19    109.    Plaintiff Priscilla Damante, as a successor-in-interest on behalf of the Estate of

20    Salvatore Damante, is a citizen of the State of California. *Id.* ¶ 75.

21    110.    Plaintiff John Helldorfer is a citizen of the State of California. *Id.* ¶ 76.

22    111.    Plaintiff Juan Reyes is a citizen of the State of California. *Id.* ¶ 77.

23    112.    Plaintiff Sylvia Long is a citizen of the State of California. *Id.* ¶ 78.

24    113.    Plaintiff Donald Hodges is a citizen of the State of California. *Id.* ¶ 79.

25    114.    Plaintiff Lonny Breyman is a citizen of the State of California. *Id.* ¶ 80.

26    115.    Plaintiff Alicia Gonzalez is a citizen of the State of California. *Id.* ¶ 81.

27    116.    Plaintiff Francesca Hawthorne, as a successor-in-interest on behalf of the Estate of

28    Margot Nichols, is a citizen of the State of California. *Id.* ¶ 82.

117.    Plaintiff Graham Lelliott is a citizen of the State of California. *Id.* ¶ 83.

118.    Plaintiff Robert Dosier is a citizen of the State of California. *Id.* ¶ 84.

119.    Plaintiff Alice Hodes is a citizen of the State of Colorado. *Id.* ¶ 85.

120.    Plaintiff Rosemarie Kessler-Hafer is a citizen of the State of Colorado. *Id.* ¶ 86.

## IV.    PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED

121.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b). Defendants BMS and Sanofi have received a copy of, but have not yet been served with, the Complaint. Moreover, the Complaint was filed on September 4, 2012, which is less than 30 days prior to the date of this Notice.

122.    The Northern District of California is the federal judicial district encompassing the Superior Court of the State of California, County of San Francisco, where this suit was originally filed. Venue is therefore proper in this district under 28 U.S.C. § 1441(a).

123.    Jurisdiction pursuant to 28 U.S.C. § 1332 requires consent of all Defendants. Defendant McKesson has not been served and therefore its consent to this removal is not required. *See Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) (finding an exception to the consent rules where a defendant has not been properly served at the time of removal). Moreover, Defendant McKesson is fraudulently joined and therefore is not required to join in the removal. *United Computer Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). The unidentified defendants Does 1-100 are not required to consent to removal. *See Hafiz v. Greenpoint Mortg. Funding*, 409 F. App'x 70, 72 (9th Cir. 2010) (nominal parties are not required to consent to removal).

124.    Defendants BMS and Sanofi are providing Plaintiffs with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

125.    Pursuant to 28 U.S.C. § 1446(d), Defendants BMS and Sanofi are filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, County of San Francisco.

126.    Defendants BMS and Sanofi hereby demand a trial by jury on all issues and all counts of the Complaint.

1

2          WHEREFORE, Defendants BMS and Sanofi hereby give notice that the above-entitled state

3   court action, formerly pending in the Superior Court of the State of California, County of San

4   Francisco be removed to the United States District Court for the Northern District of California.

5

6

7                                  By: _____
                                        Maurice A. Lefler
8                                        Michael J. Baker
                                         Jeremy M. McLaughlin
9

10                                      *Attorneys for Defendants Bristol-Myers Squibb*
                                        *Company, Sanofi-Aventis U.S. LLC, Sanofi US*
11                                      *Services Inc., and Sanofi-Synthelabo Inc.*

12

13  Dated:  September 5, 2012

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on September 5, 2012, a true and correct copy of the foregoing has been

3   sent to all counsel and parties listed below via U.S. Mail.

4
        Nancy Hersh
5       Mark E. Burton, Jr.
        HERSH & HERSH
6       601 Van Ness Avenue, Suite 2080
        San Francisco, CA 94102
7
8       Michael Miller
        Jeffrey Travers
9       THE MILLER FIRM, LLC
        108 Railroad Ave.
10      Orange, VA 22960

11      *Attorneys for Plaintiffs*

12
        McKesson Corporation
13      The Prentice Hall Corporation Systems, Inc.
        2730 Gateway Oaks Dr., Suite 100
14      Sacramento, CA 95833

15      *Defendant*

16

17                                              Jeremy M. McLaughlin

18

19

20

21

22

23

24

25

26

27

28